IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACK L. FRANKS, | ) | |
| | ) | Civil Action No. 2:14-cv-1733 |
| Plaintiff, | ) | |
| | ) | Judge David Stewart Cercone |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| | ) | |
| ZORRAINE M. WAGUESPACK, et al., | ) | ECF Nos. 3 & 5 |
| | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by Defendant Title IV-D

Legal Services Unit (ECF No. 3) be granted and the claims against it be dismissed with

prejudice.  It is further recommended that the Motion to Dismiss filed by Defendant the

Honorable Alexander P. Bicket (ECF No. 5) be granted and the claims against him be dismissed

with prejudice.

## II.    REPORT

This Section 1983 action involves ongoing state court child-support proceedings

presently being litigated in both the courts of the State of Louisiana and the Commonwealth of

Pennsylvania.  Plaintiff, Jack L. Franks, the father-payor for two minor children, has found

himself between the proverbial "rock and a hard place" in attempting to defend himself in the

Louisiana courts, after entering into an agreement dated June 1, 2007 (the "Agreement")

resolving all divorce and ancillary matters and claims, including claims for alimony pendent lite,

alimony and child support in the Allegheny County Court of Common Pleas in Pennsylvania.

Plaintiff contends that his attempt to enforce the terms of the Agreement in the child support proceeding in Louisiana, and the Louisiana Defendants' attempts to have their incorrect orders enforced in the Pennsylvania courts, have allegedly resulted in a violation of his civil rights under the U.S. Constitution, specifically his rights to equal protection of all the laws, due process of law, to his property, and impeding the due course of justice, under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

In the present action, Plaintiff has named as Defendants Judge Zorraine M. Waguespack in her official capacity as 21st Judicial District Court Judge of the State of Louisiana ("Judge Waguespack"), Scott M. Perrilloux in his official capacity as District Attorney for the Louisiana 21st Judicial District Court ("D.A. Perrilloux"), Alexander P. Bicket in his official capacity as Judge of the Court of Common Pleas of Allegheny County, Pennsylvania/Family Division ("Judge Bicket"), and the Title IV-D Legal Services Unit of the Department of Law of the County of Allegheny ("Title IV-D LSU").[1]

For relief, Plaintiff seeks injunctive and declaratory relief, in particular:

> (b) Issue an injunction prohibiting the Louisiana Defendants from taking any action to attempt to enter or enforce incorrect orders in the State of Louisiana or in the Commonwealth of Pennsylvania;

> (c) Enjoin the Pennsylvania Defendants from prosecuting any orders from the courts of the State of Louisiana known not to comply in full with the parties' Agreement, the Uniform Interstate Family Support Act ["UIFSA"] and the multiple orders of the Court of Common Pleas and Superior Court of the Commonwealth of Pennsylvania;

> (d)  Declare that the Louisiana Defendants are prohibited from modifying Plaintiff's June 1, 2007 Pennsylvania Support Order;

---

[1]Judge Waguespack and Perrilloux are collectively referred to as the "Louisiana Defendants," and Judge Bicket and Title IV-D LSU are collectively referred to as the "Pennsylvania Defendants."

(e) Declare that the Louisiana Defendants are prohibited from not recognizing the Plaintiff's December 3, 2013 UIFSA Order; [and]

(f) Declare that the proceedings in the courts of the State of Louisiana as applied in this case violate Plaintiff's constitutional rights.

Compl., ¶1; Ad damnum cl. ¶¶ b-f  (ECF No. 1).

Presently before the Court for disposition are the motions to dismiss the Complaint with prejudice under Federal Rules of Civil Procedure 12(b)(1) and (b)(6) filed by Defendants Title IV-D LSU (ECF No. 3) and Judge Bicket (ECF No. 5).

A.     **LEGAL STANDARDS**

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, pleadings and, in particular, *pro se* complaints, are to be liberally construed. *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 322 (3d Cir. 2001)); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (holding that, when a plaintiff files a complaint *pro se*, the pleadings must be liberally construed and the Court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name").  Indeed, a *pro se* complaint "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Although, in this case, Plaintiff is proceeding *pro se,* he is an attorney licensed to practice law in the Commonwealth of Pennsylvania, and therefore, the Court will apply a less liberal pleading standard.

A motion to dismiss under Rule 12(b)(1) may be treated  as either a facial or factual challenge to the court's subject matter jurisdiction.  *Patsakis v. Greek Orthodox Archdiocese of*

*America*, 339 F. Supp.2d 689, 692 (W.D. Pa. 2004) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)); *Gould Electronics, Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000).  In the case at bar, Defendants are asserting a facial challenge, as evidenced by their briefs in support of their Motions to Dismiss.  In a facial attack, the court must consider the allegations of the complaint as true, in the light most favorable to the plaintiff, similar to a motion to dismiss under Rule 12(b)(6).  *Mortensen,* 549 F.2d at 891; *In re Kaiser Group Int'l, Inc.,* 399 F.3d 558, 561 (3d Cir. 2005).

A Rule 12(b)(1) motion is the proper vehicle for asserting Eleventh Amendment immunity because "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction."  *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n. 2 (3d Cir. 1996) (citing *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984)).  Likewise, a motion to dismiss for lack of subject matter jurisdiction is appropriate when based upon the *Rooker-Feldman* doctrine.  *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923) (holding that under Congressional legislation, only the Supreme Court has the authority to entertain a proceeding to reverse or modify the judgment of a state court, as to do so would constitute an exercise of appellate jurisdiction; district courts, on the other hand, are vested strictly with original jurisdiction and therefore lack authority to review a state court judgment); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (holding district court has no subject matter jurisdiction to review final judgments of a state court because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).  A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state

a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly* at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly* at 556-57). The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the

plaintiff's claims are based upon those documents. *Id.* A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### B.    <u>FACTUAL BACKGROUND</u>

 Franks is the defendant in an action entitled, *Lori K. Stevens v. Jack L. Franks*, entered into the docket as FD06 – 009190 – 009, in the Court of Common Pleas of Allegheny County, Pennsylvania/Family Division ("Allegheny County court").  Franks is also the defendant named in *Lori Stevens Franks v. Jack Franks*, entered into the docket as 2006 – 000-3744 DIV.: "H" in the 21st Judicial District Court, Parish of Tangipahoa, State of Louisiana ("Louisiana court").

Franks and Lori Stevens (hereinafter "Stevens" or "Mother") were married on July 28, 2006 and divorced on June 1, 2007 in Allegheny County, Pennsylvania.  Franks and Stevens entered into an agreement (the "Agreement") dated June 1, 2007 resolving all divorce and ancillary matters and claims, including claims for alimony pendent lite, alimony and child support in Allegheny County, Pennsylvania.  (Compl. at ¶¶11, 13.)  The Agreement provided for the payment of alimony and child support through July 1, 2009 and health insurance premiums, and thereafter, Franks was obligated to continue paying health insurance premiums and commence paying Mother "monthly child support consistent with the Pennsylvania Support Guidelines then in effect."  (Compl. at ¶¶14-15.) The Agreement further provides that if the parties are unable to agree on the amount of monthly child support, the matter is to be adjudicated by the Allegheny County court or other competent jurisdiction utilizing the Pennsylvania Support Guidelines retroactive to the end of July 2009 payment term.  (Compl. at

¶16.)  The Pennsylvania Superior Court interpreted the Agreement as a valid legal contract in *Franks v. Stevens,* No. 1523 WDA 2008 (Pa. Super. 12-31-09).[2]  (Compl. at ¶17.)

Thereafter, Franks anticipated that Mother would obtain agreement and enter a PACSES order in the Allegheny County court but instead, instituted another support action in the State of Louisiana where she and the children had relocated.  (Compl. at ¶18.)  In response, Franks presented a motion in the Allegheny County court requesting that another interim PACSES support order be entered in that court pursuant to the Agreement and that a support hearing be scheduled. Judge Cathleen Bubash of the Allegheny County Court denied that request finding that Mother was free to file her support complaint in Louisiana as long as the Pennsylvania Support Guidelines were applied. (Compl. at ¶¶ 19-20.)  Franks appealed Judge Bubash's decision to the Pennsylvania Superior Court, which affirmed in *Franks v. Stevens,* No. 1418 WDA 2009 (Pa. Super. 07/21/10).   According to Franks, in its unpublished opinion dated July 21, 2010, the Superior Court found that choice of law (Pennsylvania) is specified in the Agreement and "that pursuant to the terms of the MSA, Pennsylvania Support Guidelines must be followed."  (Compl. at ¶21.)[3]

In pursuing her support complaint in Louisiana, Mother requested that the Louisiana court apply the Louisiana support guidelines, even though she agreed that Pennsylvania Support Guidelines would be followed and knowing that the Pennsylvania Superior Court had ruled that the Pennsylvania Support Guidelines must be followed.   Despite the Pennsylvania Superior

---

[2] Although the Court would normally take judicial notice of proceedings and rulings of state  courts, the Court is unable to do so here because the records in the proceedings before the Allegheny County Court of Common Pleas and Pennsylvania Superior Court involving Franks and Lori Stevens are under seal.  Moreover, Franks has not provided this Court with a copy of the rulings of the Pennsylvania Superior Court which he references in his Complaint.
[3] *See* Note 2, *supra.*

Court's ruling and Franks' objections to applying the Louisiana support guidelines, the Louisiana trial court issued an order dated December 7, 2009 stating that the Louisiana Child Support Guidelines would be applied, in direct contravention of the rulings of Judge Bubash and the Superior Court in the Pennsylvania Proceedings, and the parties' Agreement. (Compl. at ¶¶22-23.) Subsequently, Franks filed a second motion to prohibit the use of the Louisiana support guidelines, which was denied, as well as a motion for reconsideration, which was also denied. (Compl. at ¶ 24.)

In the meantime, when Franks learned that the judge in the Louisiana court intended to proceed with support proceedings applying the Louisiana support guidelines, he sought an injunction in Allegheny County, Pennsylvania to prohibit the "parties" from proceeding with a support hearing in Louisiana. (Compl. at ¶25.) In deciding Franks' request for injunctive relief, Judge Bubash spoke with the Louisiana judge at that time, the Honorable Elizabeth Wolfe,[4] who allegedly informed Judge Bubash that the support hearing scheduled in Louisiana for March 22, 2010 would be indefinitely postponed, so there was no need for Franks to be present in Louisiana on that date, and thus, no need for an injunction. (Compl. at ¶26.) Consequently, Judge Bubash denied Franks' request for an injunction to prevent the Louisiana court from holding the support hearing scheduled for March 22, 2010. (*Id.*)

Despite her assurances to Judge Bubash, Judge Wolfe allegedly conducted the support hearing in Louisiana on March 22, 2010, without Franks or his counsel present, and issued a support order utilizing the Louisiana support guidelines. That order also allegedly terminated

---

[4] Judge Wolfe later recused herself in the Louisiana case and was replaced by Judge Zorraine M. Waguespack, a named Defendant in this federal case.

Franks' custody and visitation rights. (Compl. at ¶27.) Franks sought to have the March 22, 2010 order vacated, but the Louisiana trial court denied his request. (Compl. at ¶28.)

Franks then appealed the December 7, 2009 and March 22, 2010 orders of the Louisiana court to the First Circuit Court of Appeals of the State of Louisiana which, on September 20, 2013, upheld the Louisiana trial court's decision to utilize the Louisiana guidelines and heavily sanctioned Franks. (Compl. at ¶ 30.) Thereafter, Mother attempted to register and file the March 22, 2010 order of the Louisiana court with the Allegheny County court for enforcement purposes. In response, Franks presented a motion to strike the foreign order before Judge Bubash on July 19, 2010, at which time Judge Bubash entered an order striking the Louisiana order. (Compl. at ¶¶ 31-32.)

On December 6, 2010, a proceeding was held in Louisiana with regard to Mother's rule for sanctions and rule for contempt and, as a result, a judgment was entered on January 19, 2011 awarding counsel fees and costs to be paid by Franks, as well as fixing child support pursuant to the Louisiana Child Support Guidelines. (Compl. at ¶33.) Thereafter, Mother attempted to register the January 19, 2011 Louisiana court order in the Allegheny County court, but the Allegheny County court struck the Louisiana court order on March 30, 2011. (Compl. at ¶34.)

In June of 2013, Judge Waguespack, through D.A. Perrilloux, attempted to register and enforce the January 19, 2011 Louisiana court order in the Allegheny County court. Consequently, a UIFSA hearing was held on December 3, 2013 in the Allegheny County court. (Compl. at ¶35.) At that hearing, an attorney from Defendant Title IV-D LSU attended on behalf of Mother, without filing an appearance in the case or providing prior notice to Franks. (Compl. at ¶36.) Also at the UIFSA hearing, Franks presented the previous orders of Judge Bubash striking the Louisiana judgment as well as the October 2009 opinion of the Pennsylvania

Superior Court affirming that any Louisiana child support order must apply the Pennsylvania Support Guidelines. Because the Louisiana order Mother was attempting to register did not apply the Pennsylvania Support Guidelines, Franks' opposition to the registration of the Louisiana order was sustained and registration of the Louisiana order was denied. (Compl. at ¶37.) Title IV-D LSU filed exceptions to the UIFSA order and sought additional time to file a supporting brief, which was granted. However, Title IV-D LSU never filed a brief and its exceptions were eventually dismissed. (Compl. at ¶38.)

Contemporaneously with the UIFSA hearing in the Allegheny County court, Franks filed a motion for modification of the Louisiana child support order in the Louisiana court, in which he requested that the Pennsylvania Child Support Guidelines be applied to the Louisiana order. (Compl. at ¶39.) In response, Mother filed an Answer and Reconventional Demand seeking contempt for failure to pay. (*Id.*) Judge Waguespack issued a rule to show cause as to why the Louisiana order should not be modified and scheduled a hearing for April 28, 2014. (Compl. at ¶¶ 40-41.) Franks' counsel in the Louisiana proceedings was personally assured by Judge Waguespack that if Franks appeared at the April 28th hearing, he would not be incarcerated or arrested given the outstanding Louisiana support judgment. Despite such assurance, Judge Waguespack placed deputy sheriffs behind Franks at the hearing to arrest him unless he stipulated to pay the stricken Louisiana judgment. (Compl. at ¶¶42-43.) Judge Waguespack then entered judgment finding Franks in contempt and holding that the January 19, 2011 Louisiana support order would not be modified. (Compl. at ¶44.)

Franks then contacted D.A. Perrilloux, whose office has overall responsibility for the policies, procedures and operations of support enforcement of UIFSA Title IV-D proceedings in

Louisiana.  Franks asked Perrilloux to comply with the December 3, 2013 UIFSA order entered in Allegheny County, Pennsylvania, but Perrilloux refused.  (Compl. at ¶46.)

Upon returning to Pennsylvania, Franks filed a Renunciation of Stipulation in the Louisiana proceeding, having been "coerced" by Judge Waguespack into agreeing to the stipulation at the April 28, 2014 hearing.  Judge Waguespack denied said renunciation as well as his Motion to Make Foreign Judgment Executory and Petition Requiring Application of the Pennsylvania Support Guidelines.  (Compl. at ¶¶47.)  Franks also filed an Objection to the April 28, 2014 Child Support Order, which was denied.  (Compl. at ¶¶49, 51.)

On or about July 2014, Franks petitioned the Allegheny County court seeking injunctive relief to prevent the parties from participating in any further court proceeding in Louisiana, and requesting a child support (PACSES) order be issued utilizing the Pennsylvania Child Support Guidelines.  (Compl. at ¶¶59, 70e.)  This petition was newly assigned to Judge Bicket, who was not familiar with the history of this case and reluctant to grant the requested relief.  (Compl. at ¶¶ 59, 70f.)  An attorney from Title IV-D LSU appeared on behalf of Mother at the hearing on Franks' petition for injunctive relief and opposed the relief sought in Franks' petition.  (Compl. at ¶58.)[5]  On July 9, 2014, Judge Bicket denied Franks' petition.  (Compl. at ¶¶59, 70e.)

The Louisiana court continued to seek registration and enforcement of its child support orders in the Allegheny County court.  (*Id.*)  Another hearing was held before Judge Waguespack on July 21, 2014 at Mother's request, at which Mother presented a "third" set of stipulations to

---

[5] According to Proposed First Amended Complaint which Franks has requested leave to file, *see* ECF Nos. 20 & 20-1, the attorney for Title IV-D LSU who appeared at the July 2014 hearing on behalf of Mother has been identified as Mary B. Adamczyk, Title IV-D Solicitor for the Allegheny County Law Department.  Proposed 1st Am. Compl. at ¶¶11, 50 (ECF No. 20-1).  Ms. Adamczyk is named as a defendant in the Proposed First Amended Complaint.

the Louisiana court containing new and different terms than those contained in the prior stipulations previously provided by Mother to Franks. Franks asserts that the July 21, 2014 hearing was conducted ex parte, as he was prevented from appearing at it; however, he subsequently filed an Objection to the July 21, 2014 Child Support Order Not Calculated in Accordance with the Pennsylvania Child Support Guidelines, which was denied by the Louisiana court. (Compl. at ¶¶52-53.) Judgment on the third set of stipulations was entered by the Louisiana court on August 22, 2014. (Compl. at ¶52.)

On or about September 8, 2014, Franks filed a Petition for Appeal of the August 22, 2014 judgment/support order, but was informed from the Louisiana court that he was required to pay in full the Louisiana judgments as a condition precedent to taking an appeal. (Compl. at ¶¶54-55.) Thereafter, Franks filed a petition requesting that Judge Waguespack waive the payment requirement, but as of the date this federal action was filed, *i.e.,* December 23, 2014, Judge Waguespack had not yet ruled on Franks' request. (Compl. at ¶56.)[6]

In October of 2014, D.A. Perrilloux's office instituted another UIFSA action in Allegheny County court, seeking to register and enforce the August 22, 2014 Louisiana support order which did not apply the Pennsylvania Child Support Guidelines. (Compl. at ¶60.) A UIFSA hearing was scheduled for January 6, 2015 in the Allegheny County court. (*Id.*)[7]

---

[6] According to the Proposed First Amended Complaint, Judge Waguespack retired in December of 2014 without ruling on Franks' waiver request. Proposed 1st Am. Compl. at ¶54 (ECF No. 20-1). Franks further alleges that after she retired, Judge Waguespack back-dated a court order denying the motion at a date beyond which he could perfect a timely appeal. *Id.*

[7]According to the Proposed First Amended Complaint, at the January 6, 2015 UIFSA hearing, the court hearing officer appointed to preside over the UIFSA case disclosed to Franks that she had been contacted by various individuals from Louisiana and had provided them with information and documents, including support calculations, which pertained to his case. Franks requested copies of the communications and information provided by the court hearing officer but she was unable to locate those documents at the UIFSA hearing. Consequently, the January

Franks instituted this federal action on December 23, 2014 against Judge Waguespack, D.A. Perrilloux, Judge Bicket, and Title IV-D LSU, alleging violations of his rights to due process and equal protection of the laws under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. §1983. For relief, Franks seeks a permanent injunction to enjoin (1) the Louisiana Defendants from taking any action to attempt to enter or enforce incorrect orders in the State of Louisiana or in the Commonwealth of Pennsylvania and (2) the Pennsylvania Defendants from prosecuting any orders from the courts of the State of Louisiana known not to comply in full with the parties' Agreement, the UIFSA, and multiple orders of the Allegheny County Court of Common Pleas and Pennsylvania Superior Court (Compl. at ¶¶66-67, ad damnum cl. at ¶¶b & c). Franks also seeks a declaratory judgment against the Louisiana defendants declaring (1) the state of the existing law, (2) that the Louisiana Defendants are prohibited from modifying Plaintiff's June 1, 2007 Pennsylvania Support Order, (3) that the Louisiana Defendants are prohibited from not recognizing the December 3, 2013 UIFSA Order, and (4) that the proceedings in the Louisiana courts as applied in this case violate his constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. §1983 (Compl. at ¶¶73 & 85, ad damnum cl. at ¶¶ d, e, & f).

Defendants Waguespack, Bicket and Title IV-D LSU have filed motions to dismiss the Complaint (ECF Nos. 3, 5, & 15).[8] Franks has responded by filing briefs in opposition to those motions (ECF Nos. 11, 14 & 19), as well as a motion for leave to file an amended complaint (ECF No. 20). The subject of this Report and Recommendation is the motions to dismiss the

6, 2015 UIFSA hearing was continued and the Title IV-D LSU attorney, Ms. Adamczyk was ordered to provide those documents to Franks. Proposed 1st Am. Compl. at ¶57 (ECF No. 20-1).

[8] According to the Proof of Service filed by Plaintiff (ECF Nos. 8 & 8-1), Defendant Scott M. Perrilloux was served by certified mail on December 29, 2014; however, Perrilloux has

Complaint filed by Title IV-D LSU ([ECF No. 3](#)) and Judge Bicket ([ECF No. 5](#)), to which Plaintiff has filed responses and briefs in opposition. Thus, the motions are now ripe for disposition.

### C. DISCUSSION

Title IV-D LSU and Judge Bicket have moved to dismiss the Complaint against them on a number of grounds. In particular, the Pennsylvania Defendants rely on Eleventh Amendment immunity as a bar to bringing this federal action for lack of subject matter jurisdiction. In addition, the Pennsylvania Defendants rely on the doctrine of *Younger* abstention to prevent federal intervention in the ongoing state court child-support proceedings. Judge Bicket also submits that the domestic relations exception to federal jurisdiction bars Plaintiff's claims against him and he is entitled to absolute judicial immunity, while Title IV-D LSU also relies on the *Rooker-Feldman* doctrine to divest this Court of jurisdiction. The Court turns first to those arguments challenging its subject matter jurisdiction.

### 1. Eleventh Amendment Immunity

Title IV-D LSU and Judge Bicket submit that Plaintiff's claims against them are barred by the Eleventh Amendment, and therefore, should be dismissed with prejudice for lack of subject matter jurisdiction. The Eleventh Amendment bars civil rights suits against a state and their agencies in federal court by private parties where the state has not consented to such action.[9] *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (Pennsylvania) (citing *Alabama*

---

not filed any response to the Complaint to date.

[9] The Eleventh Amendment of the United States Constitution provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State,

*v. Pugh*, 438 U.S. 781 (1978)); *see also Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (agencies that are arms of the state). This immunity applies even to claims seeking injunctive relief. *Laskaris*, 661 F.2d at 25; *Pennhurst*, 465 U.S. at 100 (holding Eleventh Amendment immunity applies "regardless of the nature of the relief sought.") (citation omitted). Pennsylvania, by statute, has specifically withheld consent to suit in federal court. *Laskaris,* 661 F.2d at 25 (citing 42 PA. CONS. STAT. ANN. § 8521(b)).[10]

Moreover, although the scope of the Eleventh Amendment is not the same as that of Section 1983, the Supreme Court has determined that Congress did not intend for Section 1983 to overcome the sovereign immunity of states embodied in the Eleventh Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-67 (1989). A state may nonetheless waive such immunity, but only if "[t]he state either . . . voluntarily invoke[s] [federal] jurisdiction by bringing suit . . . or . . . makes a 'clear declaration' that it intends to submit itself to [federal] jurisdiction." *MCI Telecomm Corp. v. Bell Atlantic-Pa.,* 271 F.3d 491, 504 (3d Cir. 2001) (quoting *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)) (internal quotation marks omitted). The Complaint does not allege any facts to show or

---

or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

[10] 42 PA. CONS. STAT. ANN. §8521(b) provides that "[n]othing contained in this subchapter [Actions Against Commonwealth Parties] shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." In addition, 1 PA. CONS. STAT. ANN. § 2310 provides that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." The Pennsylvania General Assembly has delineated nine exceptions to sovereign immunity for damages arising out of a negligent act at 42 PA. CONS. STAT. ANN. §8522; however, none of these exceptions is implicated here as Plaintiff is not seeking damages for a negligent act.

15

suggest that the Pennsylvania Defendants have waived Eleventh Amendment immunity here.

The Eleventh Amendment immunity also applies to actions in federal court against state officials acting in their official capacity for money damages or back pay, as such retroactive relief would be paid out of the state treasury. *Laskaris,* 661 F.2d at 26 (citing *Edelman v. Jordan,* 415 U.S. 651 (1974)); *see also Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (a civil action brought against a state official in his official capacity is deemed an action against the state); *Hafer v. Melo,* 502 U.S. 21, 26 (1991) (when a state official is sued in an official capacity, the real party in interest is the government entity that employs them). *Cf. Will,* 491 U.S. at 71 (a State and its officials acting in their official capacities are not "persons" subject to suit within the meaning of Section 1983). However, the Supreme Court has noted an exception to this rule where "suits against individual state officers [are] for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess,* 297 F.3d 310, 323 (3d Cir. 2002) (citing *MCI Telecomm. Corp.,* 271 F.3d at 503). This exception is commonly referred to as the doctrine of *Ex Parte Young,* 209 U.S. 123, 155-56 (1908). *See Pa. Fed'n of Sportsmen's Clubs,* 297 F.3d at 323. The Supreme Court has narrowly applied this exception, *Pennhurst,* 465 U.S. at 102, and indeed, has declined to apply the exception to relief styled as prospective relief but which, in actuality, seeks compensation for a past injury by a state official, *Edelman v. Jordan,* 415 U.S. 651, 666-68 (1974).

### a. Title IV-D LSU

Title IV-D LSU submits that it is entitled to Eleventh Amendment immunity from Plaintiff's claims as it provides legal child-welfare services to the public on behalf of the Commonwealth of Pennsylvania, in furtherance of important state interests, as required by Title IV-D of the Social Security Act, 42 U.S.C. §§ 601 *et seq.*, and by cooperative agreement entered

into by and between the Commonwealth of Pennsylvania, the Court of Common Pleas of Allegheny County, Pennsylvania, and the Allegheny County Law Department. (Compl. ¶10, Br. in Supp. of Mot. to Dismiss at 8 (ECF No. 4). Title IV-D LSU further argues that Pennsylvania's domestic relations agencies, including those involving children and youth services, are defined by statute as arms of the state court and state government institutions, citing in support *Wattie-Bey v. Attorney General's Office*, 424 F. App'x 95, 98 n. 2 (3d Cir. 2011). In particular, Title IV-D LSU points out that the Family Division and Domestic Relations Section of the Allegheny County Court of Common Pleas have previously been found to be entitled to Eleventh Amendment immunity in *Bryant v. Cherna,* 520 F. App'x 55, 57 (3d Cir. 2013). The Court agrees with Title IV-D LSU that it is an arm of the state and, as such, is entitled to Eleventh Amendment immunity from Plaintiff's claims.

Eleventh Amendment immunity extends to suits against "arms of the state," *i.e.,* departments or agencies of the state having no existence separate from the state. *Laskaris,* 661 F.2d at 25 (citing *Mt. Healthy City Bd. of Educ.,* 429 U.S. at 280 ). Under Pennsylvania statutory law, the term "Commonwealth government" includes the "courts and other officers or agencies of the unified judicial system, . . .." 42 PA. CONS. STAT. ANN. §102. Moreover, the court of appeals has acknowledged this, observing that the "Commonwealth vests judicial power in a unified judicial system, . . . and all courts and agencies of the UJS are part of the Commonwealth government rather than local entities." *Haybarger v. Lawrence Cnty. Adult Probation & Parole,* 551 F.3d 193, 198 (3d Cir. 2008) (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005) and PA. CONST. ART. V, §1). *See also Callahan v. City of Phila.*, 207 F.3d 668, 672 (3d Cir. 2000) ("All courts and agencies of the unified judicial system ... are part of 'Commonwealth government' and thus are state rather than local agencies.") (citing PA. CONST.

ART. V, § 6(c); 42 PA. CONS.STAT. ANN. § 102 (West Supp. 1999); 42 PA. CONS. STAT. §301 (West 1981)).   As such, an individual judicial district and its departments are entitled to Eleventh Amendment immunity.  *Haybarger,* 551 F.3d at 198.

As Title IV-D LSU correctly notes, "Title IV-D [of the Social Security Act] requires states to establish comprehensive programs and automated data processing for child support enforcement . . . as conditions for receiving state grants for services for needy families with children and child welfare services."  *Tauro v. Dep't of Pub. Welfare,* No. 384 C.D. 2009, 2009 WL 9102314, at *2 n. 5 (Pa. Commw. Ct. Oct. 13, 2009) (citing 42 U.S.C. §§ 654, 654(a)). Pursuant to 45 C.F.R. §303.20(f), such state child support enforcement programs must comply with minimum federal organizational and staffing requirements, which require, inter alia, the retention of attorneys or prosecutors, "in sufficient numbers to achieve the standards for an effective program, . . . to represent the agency in court or administrative proceedings with respect to the establishment and enforcement of orders of . . . support[.]"  Title IV-D LSU maintains that it provides such child welfare services in conjunction with the Court of Common Pleas of Allegheny County and in compliance with and in furtherance of the Commonwealth of Pennsylvania's comprehensive child support enforcement program.[11]

Moreover, the Court takes judicial notice of the following statement on the website for the Pennsylvania Child Support Program (PCSP):

> The IV-D program is grounded in both federal and state statutes as well as judicial rules and procedures. The Bureau of Child Support Enforcement (BCSE) within the Department of Public Welfare (DPW) is the single state agency charged with administering the IV- D program in the Commonwealth of Pennsylvania. The federal

---

[11]For an explanation of the operation of Pennsylvania's Title IV-D program, *see Tauro,* 2009 WL 9102314, at *2-*3 (noting, *inter alia*, "the county courts' domestic relations sections have, by cooperative agreement, been designated Pennsylvania's Title IV–D agencies.").

statutory basis for the program is U.S. Public Law 93-647, Title IV-D of the Social Security Act. The state statutory basis is in Title 23 of the Pennsylvania Consolidated Statutes Annotated (23 Pa. C.S.A.).

The policies and procedures that govern most aspects of the child support program in Pennsylvania are the Code of Federal Regulations (CFR) in 45 CFR, Parts 232 and 301 to 308; Chapter 55 of the Pennsylvania Code; and the Pennsylvania Rules of Court, Actions for Support in the Rules of Civil Procedure, 42 Pa. C.S.A. Rule 1910 et seq. Additionally, existing policies and procedures may be affected by case law as well as court and judicial proceedings.

Laws & Legislation, PA CHILD SUPPORT PROGRAM,

https://www.humanservices.state.pa.us/csws/csws_controller.aspx?wvuIV1AZ3Wf__XCb67CQrMq2s5TUyrLeEW0K7iWjR0hDDScdwFDxqIVn08RPK6VrdlyXlJKGZY@jKZ0W0AU5yAJHHN9yuCUXBmAhkqb@IvkE@VcOXHl5 (last visited July 14, 2015). The PCSP's website further provides that "Pennsylvania's Child Support Program is a combined effort of the federal, state, and county governments to collect money from absent parents. PACSES is Pennsylvania's automated Child Support Enforcement System used by all 67 county Domestic Relations Sections." Domestic Relations Sections, PA CHILD SUPPORT PROGRAM,

https://www.humanservices.state.pa.us/csws/csws_controller.aspx?y5kmMLvT@4Wa9fmKQ_tviIXQkzFShh6c43I7TuoDKxlNcRusu@7LEDEjjAa3Ca9bm0uxj_SZDvv@xOFG9wiSTdSM6nV@4pQq6poB6haD32S0OJsKxMjS (last visited July 14, 2015). "Child support enforcement services in Pennsylvania are provided by the Domestic Relations Sections, DRSs, of the county Court of Common Pleas." Pa. Dep't of Public Welfare, Bureau of Child Support Enforcement, *Pennsylvania Child Support Handbook* at 2 (Pub 266, Aug. 2012)*, available at*

https://www.humanservices.state.pa.us/csws/csws/forms/Pub%20266%209-11.pdf#page=4.

It is clear from the allegations in the Complaint and the above cited authority that Title IV-D LSU is providing child support enforcement services in conjunction with the Domestic Relations Section of the Allegheny County Court of Common Pleas, pursuant to Pennsylvania's comprehensive child support enforcement program. As such, the Court finds Title IV-D LSU is a state agency entitled to Eleventh Amendment immunity from Plaintiff's claims. *See Bryant, 520 F. App'x at 57* (holding Pennsylvania state courts, including the Allegheny County domestic relations section and Family Division, are entitled to immunity from suit in federal court pursuant to the Eleventh Amendment); *Wattie-Bey, 424 F. App'x at 98 n. 2* ("domestic relations agencies . . . are defined by statute as arms of the state courts and institutions of state government").

In opposition, Plaintiff argues that an exception to Eleventh Amendment immunity applies to Title IV-D LSU since he is seeking only prospective relief against Title IV-D LSU and official capacity lawsuits against state officials for prospective relief are not treated as actions against the State, citing *Will, 491 U.S. at 71 n. 10.* In reply, Title IV-D LSU submits that the exception does not apply because Plaintiff's proposed injunctive relief is retrospective in nature, as it calls for a review of the Louisiana state court proceedings and the August 22, 2014 support order. Therefore, Title IV-D LSU argues, it is not precluded from invoking Eleventh Amendment immunity.

The Court need not consider Title IV-D LSU's argument in reply, as Plaintiff's argument conflates the Eleventh Amendment immunity standard for state officials with the standard for states and state agencies. While Plaintiff is correct that Eleventh Amendment immunity does not bar "suits against *individual state officers* for prospective relief to end an ongoing violation of federal law[,]" *see MCI Telecomm Corp., 271 F.3d at 503* (emphasis added); *see also Laskaris,*

661 F.2d at 26 (Eleventh Amendment does not bar a suit seeking declaratory or injunctive relief against a state official acting in his official capacity) (citing *Ex part Young*, 209 U.S. 123 (1908)), Title IV-D LSU is an agency of the state, not "an individual state officer." Thus, the exception to Eleventh Amendment immunity for individual state officials does not apply to Title IV-D LSU. *See Lewis v. Univ. of Tex. Med. Branch,* 665 F.3d 625, 630 (5th Cir. 2011) (Eleventh Amendment bar applies to suit for prospective relief against state agency); *Raj v. Louisiana State Univ.,* 714 F.3d 322, 328 (5th Cir. 2013) (university and its board were arms of the state, and therefore, were entitled to sovereign immunity under *Ex Parte Young* from plaintiff's claims for injunctive and prospective relief); *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (although "state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the [*Ex Parte Young*] doctrine does not extend to states or state agencies.") *Ross v. Jefferson Cnty. Dep't of Health,* 701 F.3d 655, 661 (11th Cir. 2012) (plaintiff's claim for injunctive relief was barred by the Eleventh Amendment because she failed to sue a state official).

Because Eleventh Amendment immunity applies to Section 1983 claims against states and their agencies regardless of the relief sought, *Laskaris*, 661 F.2d at 25; *Pennhurst,* 465 U.S. at 100, Title IV-D LSU is entitled to Eleventh Amendment immunity from Plaintiff's Section 1983 claims. Accordingly, this Court lacks subject matter jurisdiction over Title IV-D LSU and therefore recommends that the Complaint be dismissed as to Title IV-D LSU.

### b. __Judge Bicket__

Judge Bicket argues that he is a presiding officer of the Court of Common Pleas of Allegheny County, which is an entity of the Unified Judicial System of Pennsylvania pursuant to 42 PA. CONS. STAT. §301(4), and as such, he is entitled to the protection from suit in federal

court afforded by the Eleventh Amendment. In support, Judge Bicket submits that a civil action brought against a state official in his official capacity is deemed an action against the state. *Kentucky v.Graham,* 473 U.S. 159, 166 (1985). Thus, when a state official is sued in an official capacity, the real party in interest is the government entity that employs them. *Hafer v. Melo,* 502 U.S. 21, 26 (1991). Accordingly, Judge Bicket maintains that Plaintiff's claims against him in his official capacity are, in essence, claims against the Commonwealth of Pennsylvania, which is not subject to the waiver exception to sovereign immunity, and therefore, he is immune from suit under the Eleventh Amendment. Judge Bicket further argues that Plaintiff is precluded from maintaining any purported constitutional claims against him because state entities are not "persons" under Section 1983 and cannot be sued under that statute.

Although Judge Bicket correctly states the general rule on Eleventh Amendment immunity, as Plaintiff points out, Eleventh Amendment immunity does not bar "suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm Corp.,* 271 F.3d at 503; *see also Laskaris,* 661 F.2d at 26 (Eleventh Amendment does not bar a suit seeking declaratory or injunctive relief against a state official acting in his official capacity) (citing *Ex part Young*, 209 U.S. 123 (1908)). To this end, Franks argues that the Complaint seeks prospective injunctive relief to enjoin ongoing violations of federal law, and therefore, Judge Bicket is not entitled to Eleventh Amendment immunity.

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (438 (1997)). It

appears that the injunctive relief sought by Plaintiff from the Pennsylvania Defendants is prospective in nature—Plaintiff seeks to enjoin the Pennsylvania Defendants from taking further action on the Louisiana support orders and prosecuting any orders from the Louisiana courts, in the Allegheny County Court of Common Pleas, known to not fully comply with the parties' Agreement, UIFSA, and the multiple orders of the Allegheny County Court of Common Pleas and the Superior Court of Pennsylvania. *See* Compl., ¶¶66-67, 70a-70b, Ad Damnum Cl., ¶c. Thus, the injunctive relief sought by Plaintiff involves preventing certain actions from occurring in the future and would not result in any monetary relief, ancillary or otherwise, from the Pennsylvania Treasury. *See Edelman v. Jordan,* 415 U.S. 651, 667-68 (1974) (observing that the difference between prospective and retroactive relief in many instances is not that between day and night, and holding the Eleventh Amendment does not bar an order compelling state compliance in the future, but prohibits an injunction ordering payment of previously owed sums; however, "an ancillary effect on the state treasury is permissible and often an inevitable consequence of the principle announced in *Ex parte Young*[.]"); *see also Quern v. Jordan,* 440 U.S. 332, 348-49 (1979) (federal court injunction ordering state officials to notify class members of state administrative procedures available for collecting past welfare benefits owed to them was properly viewed as ancillary to the prospective relief already ordered by the court, and therefore, did not violate the Eleventh Amendment, because the decision to take advantage of those procedures was left entirely to the discretion of the recipients of the notice and the decision to pay any claims for retroactive benefits "rest[ed] entirely with the State, its agencies, courts, and the legislature, not with the federal court.")

 Nonetheless, Plaintiff has failed to plead an ongoing violation of federal law with regard to Judge Bicket. Other than conclusory references to violations of Plaintiff's constitutional rights

under the Fourth, Fifth, and Fourteenth Amendments, the Complaint fails to allege any facts to support the prima facie elements of such violations *by Judge Bicket*.  In this regard, Plaintiff merely asserts that on July 9, 2014, Judge Bicket, who was newly assigned to Plaintiff's domestic relations case and unfamiliar with its history, hesitated in ruling on his motion for injunctive relief to prevent the Louisiana Defendants and Title IV-D LSU from participating in any further court proceeding in Louisiana (Compl. at ¶59); that the Pennsylvania Defendants have failed and refused to enjoin or prevent the Louisiana Defendants from registering for enforcement in Pennsylvania orders from the Louisiana Court known to not comply in full with the December 3, 2013 UIFSA Order, the Parties' Agreement and the multiple orders of the Allegheny County Court of Common Pleas and Pennsylvania Superior Court (*id.* at ¶64); and that on or about July 2014, in response to Plaintiff's petition to the Allegheny County court requesting injunctive relief and a child support order (PACSES order) be issued utilizing the Pennsylvania Child Support Guidelines by the Allegheny County Domestic Relations department, Judge Bicket denied his request even though Judge Bicket knew the Louisiana courts refused to recognize the December 3, 2013 UIFSA Order and refused to correctly apply the Pennsylvania Child Support Guidelines (Compl. at ¶70e).  None of this alleged conduct by Judge Bicket suggests or implies in any way that he violated Plaintiff's constitutional rights or a federal law.  As to any alleged due process violation, the Complaint lacks any allegations to show or suggest that Judge Bicket denied Plaintiff proper notice and an opportunity to be heard on the child support enforcement issue.

Therefore, since the Complaint is completely devoid of any facts suggesting an ongoing violation of federal law by Judge Bicket, the exception of *Ex Parte Young* is not applicable here and the Eleventh Amendment bars all of Plaintiff's claims against Judge Bicket in his official

capacity.

## 2.      Absolute Judicial Immunity

Judge Bicket argues, in the alternative, that the individual capacity claims against him should be dismissed with prejudice under Rule 12(b)(6) as such claims are barred by the doctrine of absolute judicial immunity.  Although Judge Bicket presumes that Plaintiff is suing him in his individual capacity, the Court finds no evidence of such in the Complaint, but rather, the allegations in the Complaint clearly show he is being sued in his official capacity only. Paragraph 9 of the Complaint expressly states that Judge Bicket is being sued in his official capacity only. Moreover, Plaintiff is not seeking any monetary relief from Judge Bicket, but only injunctive relief.  Compl., Ad damnum cl., ¶c.  Accordingly, the Court need not and will not consider Judge Bicket's absolute judicial immunity argument because, as the Court has found above, he is entitled to Eleventh Amendment immunity on Plaintiff's official capacity claims.  *See* Discussion *supra* at 21-24.[12]

## D.      Curative Amendment

The court of appeals in *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008), has ruled that if a court is dismissing a claim pursuant to 12(b)(6) in a civil rights case it must *sua sponte "*permit a curative amendment unless such an amendment would be inequitable or futile." *See also Day v. Florida*, 743 F.3d 40, 43 (3d Cir. 2014).  In the case at bar, the Court is recommending dismissal of the claims against the Pennsylvania Defendants pursuant to Rule

---

[12] Having determined that Title IV-D LSU and Judge Bicket are immune from suit under the Eleventh Amendment, the Court need not reach Pennsylvania Defendants' alternative arguments requesting dismissal based on the Domestic Relations Exception to federal jurisdiction, *Rooker-Feldman* doctrine and/or abstention under *Younger v. Harris,* 401 U.S. 37 (1971).

12(b)(1) for lack of subject matter jurisdiction.  Therefore, the *sua sponte* amendment rule is not applicable here.  Even if it did apply, the Court finds it would be futile to allow a curative amendment as to the Pennsylvania Defendants.

In the case at bar, Plaintiff has, perhaps precipitously, moved for leave to amend his complaint (ECF No. 20) to add new parties and claims.  In the proposed amended complaint (ECF No. 20-1) attached to that motion, Plaintiff proposes to add as a defendant Mary B. Adamcyzk, a Pennsylvania attorney acting as a solicitor for the Allegheny County Law Department (Proposed Am. Compl. ¶11), and sets forth allegations regarding her involvement in the child support/UIFSA hearings (Proposed Am. Compl. ¶¶ 40, 42, 50, 56-57, 61, 82, 88, 92-95, 101, 103, 105, 113g), but does not assert any additional facts in support of his claims against Title IV-D LSU.  Likewise, the proposed amended complaint does not assert any additional facts in support of his claims against Judge Bicket.   Moreover, Defendant Title IV-D LSU has filed a response in opposition (ECF No. 22) to Plaintiff's motion for leave to amend, arguing that it would be futile to allow amendment as to Title IV-D LSU, and allowing such amendment would result in undue delay and prejudice to Title IV-D LSU.

The Court agrees that it would be futile to allow Plaintiff to file an amended complaint as to Defendants Title IV-D LSU and Judge Bicket.  Plaintiff has not asserted any new facts with regard to either Defendant.  Moreover, the Court cannot envision any facts that would change its analysis with regard to application of Eleventh Amendment immunity to the Pennsylvania Defendants.  Therefore, the Court finds that it would be futile to allow Plaintiff to amend his complaint as to Defendants Title IV-D LSU and Judge Bicket.  Accordingly, the Court recommends that the claims against the Pennsylvania Defendants be dismissed with prejudice.

E.     **CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss filed by Defendant Title IV-D Legal Services Unit (ECF No. 3) be granted and the claims against it be dismissed with prejudice.  It is further recommended that the Motion to Dismiss filed by Defendant the Honorable Alexander P. Bicket (ECF No. 5) be granted and the claims against him be dismissed with prejudice.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b) (1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrate Judges, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file objections thereto.  Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto.   Failure to file timely objections shall constitute a waiver of any appellate rights.

Dated:   August 11, 2015                              BY THE COURT:

_____
LISA PUPO LENIHAN
United States Magistrate Judge


cc:     Jack L. Franks, Esquire
        Pro Se Plaintiff
        *Via CM/ECF Electronic Mail*

        All Counsel of  Record
        *Via CM/ECF Electronic Mail*