IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACK L. FRANKS, | ) | |
| | ) | Civil Action No. 2:14-cv-1733 |
| Plaintiff, | ) | |
| | ) | Judge David Stewart Cercone |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| | ) | |
| ZORRAINE M. WAGUESPACK, et al., | ) | ECF No. 15 |
| | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss filed by Defendant Zorraine M. Waguespack (ECF No. 15) be granted and the claims against her be dismissed with prejudice.

**II.   REPORT**

Plaintiff commenced this civil rights action under 42 U.S.C. § 1983 against multiple defendants, including Zorraine M. Waguespack, in her official capacity as a 21st Judicial District Court Judge of the State of Louisiana, seeking injunctive and declaratory relief for alleged violations of his constitutional rights arising out of ongoing state court child-support proceedings presently being litigated in both the courts of the State of Louisiana and the Commonwealth of Pennsylvania. Plaintiff, Jack L. Franks, the father-payor for two minor children, has found himself between the proverbial "rock and a hard place" in attempting to defend himself in the Louisiana

courts, after entering into an marriage settlement agreement dated June 1, 2007 (the "Agreement") resolving all divorce and ancillary matters and claims, including claims for alimony pendent lite, alimony and child support, in the Allegheny County Court of Common Pleas in Pennsylvania. Plaintiff contends that his attempt to enforce the terms of the Agreement in the child support proceeding in Louisiana, and the Louisiana Defendants'[1] attempts to have their incorrect orders enforced in the Pennsylvania courts, have allegedly resulted in a violation of his civil rights under the U.S. Constitution, specifically his rights to equal protection of all the laws, due process of law, to his property, and impeding the due course of justice, under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

In addition to Judge Waguespack, Plaintiff has also named as Defendants, Scott M. Perrilloux in his official capacity as District Attorney for the Louisiana 21st Judicial District Court ("D.A. Perrilloux"), Alexander P. Bicket in his official capacity as Judge of the Court of Common Pleas of Allegheny County, Pennsylvania/Family Division ("Judge Bicket"), and the Title IV-D Legal Services Unit of the Department of Law of the County of Allegheny ("Title IV-D LSU").[2]

For relief, Plaintiff seeks injunctive and declaratory relief, in particular:

> (b) Issue an injunction prohibiting the Louisiana Defendants from taking any action to attempt to enter or enforce incorrect orders in the State of Louisiana or in the Commonwealth of Pennsylvania;

---

[1] The "Louisiana Defendants" collectively refer to Judge Waguespack and Scott M. Perrilloux, District Attorney for the Louisiana 21st Judicial District Court.
[2] Judge Bicket and Title IV-D LSU are collectively referred to as the "Pennsylvania Defendants."

> (c) Enjoin the Pennsylvania Defendants from prosecuting any orders from the courts of the State of Louisiana known not to comply in full with the parties' Agreement, the Uniform Interstate Family Support Act ["UIFSA"] and the multiple orders of the Court of Common Pleas and Superior Court of the Commonwealth of Pennsylvania;
>
> (d) Declare that the Louisiana Defendants are prohibited from modifying Plaintiff's June 1, 2007 Pennsylvania Support Order;
>
> (e) Declare that the Louisiana Defendants are prohibited from not recognizing the Plaintiff's December 3, 2013 UIFSA Order; [and]
>
> (f) Declare that the proceedings in the courts of the State of Louisiana as applied in this case violate Plaintiff's constitutional rights.

Compl., ¶1; Ad damnum cl. ¶¶ b-f (ECF No. 1).

Presently before the Court for disposition is the motion to dismiss the Complaint with prejudice filed by Defendant Zorraine M. Zaguespack (ECF No. 15).

### A. FACTUAL BACKGROUND

The Complaint alleges, with regard to Judge Waguespack, in her official capacity as 21st Judicial District Judge of the State of Louisiana, and the proceedings in the Louisiana courts, that the Judge Waguespack and Judge Wolfe, who was assigned to the Stevens-Franks child support proceedings prior to Judge Waguespack, have refused to apply the Pennsylvania child support guidelines, in direct contravention of the Uniform Interstate Family Support Act ("UIFSA"), the marriage settlement agreement (the "Agreement") between Plaintiff and Lori K. Stevens, and orders of the Court of Common Pleas of Allegheny County and the Pennsylvania Superior Court.  (Compl.,

3

¶¶ 13-16, 21-24, 27, & 29.) Instead, Judges Wolfe and Waguespack issued child support orders applying Louisiana guidelines which are less favorable to Plaintiff. (*Id.* at ¶¶27, 33, & 44.)

Plaintiff filed numerous motions with the Louisiana trial court and an appeal to the Louisiana First Circuit Court of Appeals over the application of the Louisiana guidelines, and in each instance, the Louisiana courts refused to apply the Pennsylvania child support guidelines. (*Id*. at ¶¶ 23-24, 28, 30, 33, 39-40, 44, 47, 49, 51-54.) During the appeal to Louisiana appellate court, Plaintiff sought an injunction in Allegheny County to prohibit the parties from proceeding further with support hearings in Louisiana. In response, Judge Bubash in Allegheny County spoke to Judge Wolfe, who informed Judge Bubash that the support hearing scheduled for March 22, 2010 in Louisiana would be indefinitely postponed, so there was no need for Plaintiff to appear in Louisiana and no need for an injunction. Based on Judge Wolfe's assurances, Judge Bubash declined to issue an injunction. (*Id.* at ¶¶25-26.)

Despite her assurances, Judge Wolfe conducted the support hearing on March 22, 2010 without either Plaintiff or his counsel present and modified the Pennsylvania support order to apply the Louisiana child support guidelines. Upon learning that a modified order was entered on March 22, 2010 by Judge Wolfe, Plaintiff attempted to vacate the order but his request was denied. (*Id.* at ¶¶ 27-28.)

When Stevens attempted to register the March 22, 2010 Louisiana order with the Allegheny County Court of Common Pleas for enforcement, Judge Bubash entered an

4

order on July 19, 2010 striking the Louisiana order and refusing to register it. (*Id.* at ¶¶31-32.) On January 19, 2011, Judge Wolfe conducted another *ex parte* proceeding in Louisiana, at which time she assessed counsel fees and court costs against Plaintiff and ordered child support using the Louisiana guidelines. (*Id.* at ¶33.) In March of 2011, Stevens attempted to register the January 19, 2011 Louisiana order in Allegheny County, which was stricken by Judge Bubash on March 30, 2011. (*Id.* at ¶ 34.) Judge Wolfe subsequently recused herself from further proceedings. (*Id.* at ¶ 35.)

In June of 2013, Judge Waguespack, through Defendant Perrilloux's office, attempted to register and enforce the January 19, 2011 Louisiana order in Pennsylvania pursuant to the UIFSA. (*Id.*) On December 3, 2013, a UIFSA hearing was held in Allegheny County and Plaintiff's opposition to the registration of the January 19, 2011 Louisiana order was sustained and registration was denied. (*Id.* at ¶¶ 35, 37.)

Prior to the December 3, 2013 UIFSA hearing, Plaintiff filed a motion in Louisiana seeking to have Judge Waguespack apply the Pennsylvania child support guidelines to the January 19, 2011 Louisiana order to which Stevens filed a response seeking contempt charges against Plaintiff for failure to pay. (*Id.* at ¶39.) Judge Waguespack scheduled a hearing for April 28, 2014 on these matters, and personally assured Plaintiff's Louisiana counsel that if Plaintiff appeared at the April 28th hearing, he would not be incarcerated or arrested given the outstanding Louisiana support judgment. (*Id.* at ¶¶ 41-42.) Despite such assurance, Judge Waguespack placed deputy sheriffs behind Plaintiff at the hearing to arrest him unless he stipulated to pay

5

the January 19, 2011 Louisiana judgment. (*Id.* at ¶ 43.) Judge Waguespack entered judgment on April 28, 2014 finding Franks in contempt and ordering Plaintiff to pay the January 19, 201l Louisiana order. (*Id.* at ¶ 44.) Plaintiff further alleges that on April 28, 2014, Judge Waguespack issued another child support order utilizing a fictitious occupational wage survey to establish his earning capacity despite his actual income having been provided, and prohibiting him from obtaining Stevens' actual income. (*Id.* at ¶45.)

After returning to Pennsylvania, Plaintiff filed a Renunciation of the Stipulation due to the coerced circumstances under which the stipulation was obtained at the Louisiana hearing on April 28, 2014; Plaintiff's renunciation was subsequently denied by Judge Waguespack. (*Id.* at ¶ 47.) When Plaintiff refused to abide by the stipulation, Stevens requested a hearing in Louisiana on July 21, 2014 to enforce the January 19, 2011 judgment and to obtain additional support retroactive to November 13, 2013. (*Id.* at ¶48.) On or about August 22, 2014, Judge Waguespack issued a Louisiana support order retroactive to November 13, 2013, which included, inter alia, a portion of the January 19, 2011 judgment. (*Id.* at ¶52.) Plaintiff filed objections to the August 22, 2014 order which were denied. (*Id.* at ¶ 53.)

Plaintiff attempted to take an appeal of the August 22, 2014 Louisiana order, but was ordered to pay the January 19, 2011 judgment as a condition precedent. (*Id.* at ¶¶54-55.) On or about September 18, 2014, Plaintiff filed a petition requesting that Judge Waguespack waive the payment requirement. (*Id.* at ¶ 56.) As of the date this

6

federal action was commenced, Judge Waguespack had not yet ruled on Plaintiff's petition.[3] (*Id.*)

In October of 2014, Stevens instituted another UIFSA action in Allegheny County seeking to register and enforce the August 22, 2014 Louisiana order containing support obligations from the January 19, 2011 Louisiana judgment. (*Id.* at ¶ 60.) A hearing which had been scheduled for December 15, 2014 in Allegheny County Court of Common Pleas was rescheduled for January 6, 2015. (*Id.*) Plaintiff instituted this federal action on December 23, 2014.[4]

In this federal action, Plaintiff seeks a declaratory judgment which declares the rights and responsibilities of the parties in regard to the UIFSA and how it has been applied in this case, and a declaration that the proceedings in the Louisiana courts as applied in this case violate his constitutional rights. (*Id.* at ¶¶ 69, 73.) In particular, Plaintiff asks this Court to declare that: (1) the Louisiana Defendants are prohibited from modifying the June 1, 2007 Pennsylvania Support Order; (2) the Louisiana Defendants are prohibited from not recognizing the December 3, 2013 UIFSA Order; and (3) the proceedings in the courts of the State of Louisiana as applied in this case violate Plaintiff's constitutional rights. (*Id.*, Ad damnum cl. ¶¶ d – f.) Plaintiff also

---

[3] Judge Waguespack retired in December of 2014 without ruling on Plaintiff's petition. After her retirement, Judge Waguespack allegedly back-dated a court order denying the petition to a date beyond which Plaintiff could perfect a timely appeal. (Proposed 1st Am. Compl., ¶ 54, ECF No. 20-1.)

[4] As of March 20, 2015, the date Plaintiff filed his motion to amend the complaint, the Allegheny County UIFSA proceeding was still ongoing and had not yet been resolved.

seeks an injunction prohibiting the Louisiana Defendants from taking any action to attempt to enter or enforce the incorrect orders[5] in the State of Louisiana or in the Commonwealth of Pennsylvania. (*Id.*, Ad damnum cl., ¶ b.)

Defendant Waguespack has moved to dismiss the Complain with prejudice (ECF No. 15), to which Plaintiff has filed a brief in opposition (ECF No. 19). As the motion has been fully briefed, it is now ripe for disposition.

### B. Legal Standard

A motion to dismiss under Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Patsakis v. Greek Orthodox Archdiocese of America*, 339 F. Supp.2d 689, 692 (W.D. Pa. 2004) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)); *Gould Electronics, Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000). In the case at bar, Defendants are asserting a facial challenge, as evidenced by their briefs in support of their Motions to Dismiss. In a facial attack, the court must consider the allegations of the complaint as true, in the light most favorable to the plaintiff, similar to a motion to dismiss under Rule 12(b)(6). *Mortensen,* 549 F.2d at 891; *In re Kaiser Group Int'l, Inc.,* 399 F.3d 558, 561 (3d Cir. 2005).

A motion to dismiss pursuant to Rule 12(b)(1) is appropriate when based upon the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923) (holding that under Congressional legislation, only the Supreme Court has the authority to

---

[5] In his proposed first amended complaint, Plaintiff specifically identifies the January 19, 2011 Louisiana child support order as the order he asks this Court to enjoin. (Proposed 1st Am. Compl., ¶ 108; Ad damnum cl., ¶ b.)

8

entertain a proceeding to reverse or modify the judgment of a state court, as to do so would constitute an exercise of appellate jurisdiction; district courts, on the other hand, are vested strictly with original jurisdiction and therefore lack authority to review a state court judgment); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (holding district court has no subject matter jurisdiction to review final judgments of a state court because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257).

## C. DISCUSSION

In response to the filing of the original federal Complaint, Defendant Waguespack filed a motion to dismiss all claims against her with prejudice. In support, she relies on the *Younger* abstention doctrine,[6] the domestic relations exception to federal jurisdiction,[7] the *Rooker-Feldman* doctrine, and judicial immunity as a complete bar of the claims against her. Based on these legal precepts, Defendant Waguespack

---

[6] In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court "established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding." *Yi Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) (discussing *Younger, supra*). This principle has been subsequently extended to civil proceedings and state administrative proceedings. *Yi Yang*, 416 F.3d at 201-02 (citing *Moore v. Sims*, 442 U.S. 415 (1979) (other citations omitted)).

[7] While the domestic relations exception prohibits federal courts from issuing divorce, alimony and child custody decrees, *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992), the United States Court of Appeals for the Third Circuit has held that this exception is applicable only to diversity cases, not federal question cases. *McLaughlin v. Pernsley*, 876 F.2d 308, 312-13 (3d Cir. 1989). Here, Plaintiff has brought this action under 42 U.S.C. §1983, and thus, has invoked this Court's federal question jurisdiction. Therefore, it appears that the domestic relations exception does not apply here. *McLaughlin*, 876 F.2d at 312-13.

9

contends that it would be futile to allow Plaintiff to amend his Complaint. In response to the motion to dismiss, Plaintiff asserts arguments in opposition except as to the *Rooker-Feldman* argument, most likely because he realized that his federal claims are barred by that doctrine. Indeed, this Court finds that *Rooker-Feldman* applies here and thus divests this Court of subject matter jurisdiction over Plaintiff's claims against Judge Waguespack.

### 1. *Rooker-Feldman* Doctrine

Defendant Waguespack submits that to the extent Plaintiff's Complaint seeks relief from orders issued and judgments rendered by her in the State of Louisiana, this Court lacks subject matter jurisdiction under *Rooker-Feldman*, which bars federal lawsuits that are essentially appeals from state court judgments. Of particular relevance here, she points to *Fortune v. Domestic Relations York County,* 440 F. App'x 58 (3d Cir. 2011), and *Tauro v. Baer,* 395 F. App'x 875 (3d Cir. 2010), for the proposition that Section 1983 actions related to child support orders fall within the scope of the *Rooker-Feldman* doctrine. Planitiff has failed to respond directly to Defendant Waguespack's argument that *Rooker-Feldman* applies here.

The *Rooker-Feldman* doctrine, which is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions, originated from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Specifically, the *Rooker-Feldman* doctrine holds that a United States District Court has no subject matter

jurisdiction to review final judgments of a state court, because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257. *Feldman*, 460 U.S. at 482.[8] "The Rooker-Feldman doctrine is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir.2000); *see also Gulla v. North Strabane Twp.*, 146 F.3d 168, 171 (3d Cir.1998). This doctrine applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights. *Feldman,* 460 U.S. at 485-86 (citation omitted); *see also Van Tassel v. Hodge,* 565 F. App'x 135, 139 (3d Cir. 2014) (citing *Alvarez v. Att'y Gen.*, 679 F.3d 1257, 1263 (11th Cir. 2012) (holding *Rooker-Feldman* barred an as-applied due process claim); *McKithen v. Brown*, 626 F.3d 143, 154-55 (2d Cir. 2010) (same)); *Keene Corp. v. Cass*, 908 F.2d 293, 297 (8th Cir. 1990) ("Where a litigant attempts to circumvent the requirement of seeking direct review in the United States Supreme Court by casting her lawsuit as a section 1983 action, *Feldman*'s jurisdictional bar applied.").

In *Exxon Mobil Corp. v. Saudi Basic Industries Corporation*, the Supreme Court emphasized the narrowness of the doctrine and held that *Rooker-Feldman* is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before

---

[8]Habeas corpus petitions are an exception to the jurisdictional bar of *Rooker-Feldman*. *See Walker v. Horn,* 385 F.3d 321, 329 n. 22 (3d Cir. 2004) (citations omitted).

11

the district court proceedings commenced and inviting district court review and rejections of those judgments." 544 U.S. 280, 284 (2005); *see also Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 544 (3d Cir.2006) (citing *Exxon Mobil, supra*). The Court in *Exxon Mobile* further clarified that just because a federal claim was previously adjudicated in state court does not trigger the application of *Rooker-Feldman*. Thus, the court must determine if the plaintiff in the federal lawsuit has presented "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil,* 544 U.S. at 293 (citations omitted). If the court finds that an independent claim has been presented, then jurisdiction exists and state law controls whether the defendant prevails on preclusion principles. *Id.* As the Court pointed out, "[p]reclusion, of course, is not a jurisdictional matter." *Id.* (citing FED. R. CIV. P. 8(c)).

In 2010, the United States Court of Appeals for the Third Circuit addressed head-on its pre-*Exxon Mobil* formulation of the *Rooker-Feldman* inquiry, rejected it, and established the following test, based on the Supreme Court's holding in *Exxon Mobil*:

> [T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil,* 544 U.S. at 284). According to the court of appeals, the key to determining whether *Rooker-Feldman* bars a claim lies within the second and fourth

requirements of the four-part test. 615 F.3d at 166. Essentially, the second requirement—plaintiff must complain of injuries caused by the state court judgment—is an inquiry into the source of the plaintiff's injury. *Id.* (citing *Turner,* 449 F.3d at 547). The court of appeals further explained that a useful guidepost in determining the source of the injury is the injury's timing, "that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.*

The fourth requirement of the four-part test—that the plaintiff must invite federal court review and rejection of the state court judgment—is closely related to the second requirement. *Id.* at 168. The fourth requirement focuses, however, on "whether the federal plaintiff's claims will require appellate review of state-court decisions by the district court." *Id.* at 169. Moreover, it looks at the relief that is requested by the plaintiff. Thus, as construed by the Third Circuit, the *Rooker-Feldman* doctrine is confined to those cases meeting all four requirements of the four-part test.

Turning to the first and third factors of the *Great Western Mining* test, it is clear that Plaintiff received unfavorable orders and/or judgments from Judge Waguespack and her predecessor with regard to the child support issue, and that these orders/judgments were entered prior to the commencement of this federal litigation on December 23,2014. The two Louisiana court orders/judgments at issue here are the January 19, 2011 judgment entered by Judge Wolfe and the August 22, 2014 order entered by Judge Waguespack, which incorporated a portion of the January 19, 2011

13

judgment.[9]  Thus, both orders/judgments were issued prior to the commencement of this federal action.  In addition, both orders/judgments were unfavorable to Plaintiff, having applied the Louisiana child support guidelines instead of Pennsylvania's.  Therefore, the first and third factors of *Great Western Mining* have been met.

As to the second factor, although Plaintiff does not respond directly to Defendant Waguespack's *Rooker-Feldman* argument, he does assert elsewhere in his opposition brief[10] that he is not complaining of injuries caused by the Louisiana court orders/judgments, but rather, the process afforded him in arriving at those orders/judgments.  In this federal case, Plaintiff has alleged that he sustained the following injuries as a result of Judge Waguespack's actions:  Deprivation of his "rights to equal protection of all the laws and to due process of law, of his right to his property, in violation of the Fourth, Fifth, and Fourteenth Amendments of the [U.S.] Constitution . . . and 42 U.S.C. Section 1983."  (Compl., ¶85.)  While Plaintiff attempts to argue that

---

[9] The *Rooker-Feldman* doctrine precludes federal review of the orders of lower state courts.  *Port Auth. Benevolent Ass'n, Inc. v. Port Auth. of NY & NJ Police Dep't*, 973 F.2d 169, 178-79 (3d Cir. 1992) (collecting cases); *see also Walker,* 385 F.3d at 329 (citing *Port Auth., supra*).  Moreover, whether the Louisiana court orders/judgments were final or interlocutory does not affect application of *Rooker-Feldman* under the facts presented here.  In *Port Authority*, the court of appeals held that *Rooker-Feldman* applied to a state court's order granting a preliminary injunction.  In so holding, the court of appeals opined that the interlocutory nature of the order did not preclude application of *Rooker-Feldman* in that case because the preliminary injunction order resolved, for the moment, the dispute between the parties which formed the basis of the federal complaint.  *Id.* at 178.  To hold otherwise, the court opined, would allow the federal plaintiff to circumvent direct review by the state appellate courts and United States Supreme Court.  Likewise here, the Louisiana court orders/judgments resolved, for the moment, the child support issue between Stevens and Plaintiff, and formed the basis of Plaintiff's federal claims in this Court.

[10] *See also* Proposed 1st Am. Compl. at ¶ 114.

14

the source of these injuries is Defendant Waguespack's actions, and not the Louisiana court order/judgments, as explained below, the relief he seeks tells another story.

Initially, the Court notes that the timing of these alleged injuries suggests that they were caused by the Louisiana court orders/judgments, not some independent cause, as these injuries did not exist prior to the Louisiana court proceedings. Rather, these alleged injuries were produced by Judge Waguespack's orders/judgments in the Louisiana child support proceedings and, in particular, derive from Judge Waguespack's failure to recognize the Pennsylvania court orders/judgments which hold, and the parties' Agreement which provides, that the Pennsylvania child support guidelines shall be utilized in determining any modification of the Pennsylvania child support order. (Compl. at ¶¶ 16, 21.) Plaintiff attempts to cast Judge Waguespack's continued refusal to follow UIFSA and to apply the Pennsylvania child support guidelines as a civil rights violation; however, her conduct and/or rulings raise questions of legal error,[11] which must be appealed to the Louisiana appellate courts, and ultimately, to the United States Supreme Court.

Even if this Court were to find that Plaintiff could state a plausible claim for relief based on the Louisiana proceedings for an "as applied" violation of his constitutional rights, *see* Compl., Ad damnum cl. at ¶ f, *Rooker-Feldman* would still bar review of this claim, as the relief requested would render the Louisiana court

---

[11] *See, e.g.,* Compl. at ¶22: "[N]either [Stevens] nor the Louisiana Courts have correctly applied the Pennsylvania Guidelines to date."

15

orders/judgments null and void. *See Feldman*, 460 U.S. at 485-86;[12] *Van Tassel*, 565 F. App'x at 139. Indeed, although the Louisiana state courts may not have considered Plaintiff's constitutional claims in ruling against him, he had the opportunity to raise those claims on appeal in the Louisiana courts. *See Tauro v. Baer,* Civ. A. No. 08-1545, 2009 WL 3837247, *5 (W.D.Pa. Nov. 16, 2009) (citing *Parkview Assocs. P'ship v. Lebanon,* 225 F.3d 321, 324 (3d Cir. 2000) (noting "a party's recourse for an adverse decision in state court is an appeal to the appropriate state appellate court, and ultimately to the Supreme Court under §1257, not a separate action in federal court"), *aff'd* 395 F. App'x 875 (3d Cir. 2010). "When a plaintiff has the opportunity to raise his constitutional claims on appeal and fails to do so, the opportunity alone, is sufficient to invoke the applicability of the *Rooker-Feldman* doctrine." *Tauro,* 2009 WL 3837247, at *5 (citing *Parkview, supra*; *Hollins v. Wessel*, 819 F.2d 1073, 1074 (11th Cir. 1987)). Judge Waguespack's condition precedent to appealing the August 22, 2014 order

---

[12] In holding that the district court lacked jurisdiction over the federal action, the Supreme Court in *Rooker* opined:
> It affirmatively appears from the bill that the judgment was rendered in a cause wherein the circuit court had jurisdiction of both the subject matter and the parties; that a full hearing was had therein; that the judgment was responsive to the issues, and that it was affirmed by the Supreme Court of the State on an appeal by the plaintiffs. If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding.

263 U.S. at 415.

16

notwithstanding, Plaintiff could have sought appellate review of the order and any related constitutional violations through a mandamus action in Louisiana. As such, *Rooker-Feldman* likewise bars review of Plaintiff's alleged "as applied" constitutional claims.

This conclusion is further buttressed by the Court's application of the fourth *Great Western Mining* factor. It is clear from the relief sought that Plaintiff is inviting this Court to review and reject the Louisiana court orders/judgments. Plaintiff is seeking declaratory and injunctive relief from the Louisiana Defendants prohibiting the Louisiana Defendants from taking any action to attempt to enter or enforce incorrect court orders in Louisiana and Pennsylvania;[13] declare that the Louisiana Defendants are prohibited from modifying the June 1, 2007 Pennsylvania child support order and from not recognizing the December 3, 2013 UIFSA order entered by the Allegheny County Court of Common Pleas. If this Court were to grant such relief, it could only do so by reviewing, rejecting and declaring null and void the Louisiana court orders/judgments. *See Tauro,* 395 F. App'x at 877.[14] Plaintiff also requests that this Court declare that the

---

[13] In the proposed first amended complaint, Plaintiff specifically identifies the January 19, 2011 support order as the order Plaintiff is asking this Court to enjoin the Louisiana and Pennsylvania courts from enforcing. Proposed 1st Am. Compl., Ad damnum cl., ¶b.

[14] In *Tauro,* the plaintiff brought a Section 1983 action claiming that defendants (judges and unnamed employees of the court's family division-domestic relations section) violated his Fifth and Fourteenth Amendment rights arising from a child custody order and orders issuing bench warrants for his arrest and unlawful incarceration, and seeking injunctive, declaratory and compensatory relief. The plaintiff argued that he was not seeking to void any state court decisions, but rather seeking redress for damages and violations caused by the defendants' administrative decisions. The court

17

proceedings in the Louisiana courts as applied in this case violate Plaintiff's constitutional rights. However, as noted above, *Rooker-Feldman* also bars federal claims raising "as applied" due process and equal protection violations. See *Feldman*, 460 U.S. at 485-86; *Van Tassel*, 565 F. App'x at 139. See also *Fortune,* 440 F. App'x at 58-59 (holding *Rooker-Feldman* barred review of plaintiff's section 1983 claim that he was wrongfully incarcerated and money improperly taken from his bank account based on an order relating to his failure to pay child support). Thus, the second and fourth factors of the *Great Western Mining* test have also been met.

Accordingly, as all four factors of the *Great Western* test have been met, *Rooker-Feldman* applies to divest this Court of subject matter jurisdiction over Plaintiff's claims against Defendant Waguespack. Therefore, the Court recommends that Defendant Waguespack's motion to dismiss be granted.[15]

### 2. **Curative Amendment**

The court of appeals in *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008), has ruled that if a court is dismissing a claim pursuant to 12(b)(6) in a civil rights case it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." See also *Day v. Florida*, 743 F.3d 40, 43 (3d Cir. 2014). In the case

---

of appeals rejected this argument, finding that the administrative actions at issue formed the basis of the state court judgments. 395 F. App'x at 877. The court further found that his complaint requested that the court review and overturn the state court decisions as nullities, which would have the effect of voiding the state court judgments. *Id.* Thus, the court of appeals found that it lacked jurisdiction under *Rooker-Feldman* to review plaintiff's federal civil rights claims.

[15] Because this Court lacks subject matter jurisdiction over Plaintiff's claims against Judge Waguespack, it is not necessary for the Court to address her other arguments.

at bar, the Court is recommending dismissal of the claims against Defendant Waguespack pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Therefore, the *sua sponte* amendment rule is not applicable here. Even if it did apply, the Court finds it would be futile to allow a curative amendment as to Defendant Zaguespack.

In the case at bar, Plaintiff has moved for leave to amend his complaint (ECF No. 20) to add three new defendants and a Section 1985 claim as to them. As to the four Defendants named in the original Complaint, the allegations in the proposed amended complaint (ECF No. 20-1) are essentially the same as those contained in the original Complaint. With regard to Defendant Waguespack, Plaintiff does assert a few additional facts in support of his claims against her, but they do not alter the Court's analysis as to application of the *Rooker-Feldman* doctrine. Plaintiff supplements his original Complaint to assert events occurring since the commencement of this federal action, to wit: (1) that Judge Waguespack retired in December 2014 without ruling on his petition requesting that she waive the condition that he pay the January 19, 2011 judgment as a prerequisite to taking an appeal of her August 22, 2014 order; and (2) that Judge Waguespack back-dated a court order denying the petition to a date beyond when Plaintiff could perfect a timely appeal of the August 22, 2014 order. (Proposed 1st Am. Compl., ¶ 54.) While the alleged conduct on the part of Judge Waguespack raises some concern, these allegations would, at best, support an "as applied" constitutional violation, and should have been raised in the Louisiana courts. As such, the new allegations in the proposed first amended complaint would not change this Court's

conclusion that *Rooker-Feldman* bars review of Plaintiff's section 1983 claims against Judge Waguespack.

Therefore, the Court finds that it would be futile to allow Plaintiff to amend his Complaint as to Defendant Waguespack. Accordingly, the Court recommends that the claims against Defendant Waguespack be dismissed with prejudice.

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss filed by Defendant Zorraine M. Waguespack (ECF No. 15) be granted and the claims against her be dismissed with prejudice.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b) (1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrate Judges, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file objections thereto. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. Failure to file timely objections shall constitute a waiver of any appellate rights.

Dated: August 11, 2015         BY THE COURT:

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc: Jack L. Franks, Esquire
Pro Se Plaintiff
*Via CM/ECF Electronic Mail*

All Counsel of Record
*Via CM/ECF Electronic Mail*